**Joe CARRIZOSA, Petitioner,**

v.

**Lawrence E. WILSON, Warden, California State Prison, San Quentin, California, Respondent.**

**No. 43323.**

United States District Court
N. D. California, S. D.

July 23, 1965.

Arlene N. Heath, San Francisco, Cal., for petitioner.

Albert W. Harris, Jr., Asst. Atty. Gen., Edward P. O'Brien, Deputy Atty. Gen., San Francisco, Cal., for respondent.

ZIRPOLI, District Judge.

Petitioner, a prisoner at San Quentin, was convicted after a court trial in March 1958 of one count of robbery in the first degree in violation of California Pen.C. 211 and one count of murder in the first degree in violation of California Pen.C. 187. He was sentenced to the state prison for the term prescribed by law, the sentences on each count to run concurrently. A petition for writ of habeas corpus was filed in this Court on February 18, 1965 in which petitioner alleged that at the time of his arrest and interrogation he was not advised of his right to counsel or right to remain silent. Statements made during the interrogation were introduced at petitioner's trial by the People. This Court issued an order to show cause on February 18, 1965 and appointed Arlene Heath, Esq., to represent petitioner in these proceedings. Respondent's return was filed on March 12, 1965. Following the hearing on the order to show cause an evidentiary hearing was ordered for April 29, 1965. After a two day hearing the Court made findings of fact, which will be discussed below, and allowed both parties to file closing briefs. On June 1, 1965 after closing briefs were filed by both parties, the case was submitted for decision.

At the conclusion of the evidentiary hearing this Court made the following findings of fact: (1) petitioner did not at any time after his arrest or during his interrogation make a request for counsel; (2) at no time after his arrest

or during the subsequent interrogation was petitioner advised of his right to counsel, his right to remain silent or that any statements made by him could be used against him; (3) there was no evidence of any threats, promises or coercion of any kind; and (4) the statement made by petitioner to the police during the interrogation was used against him at his trial.

■ In Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) the Supreme Court of the United States held that when an investigation by the police begins to focus on a particular suspect, the suspect has been taken into custody, and a process of interrogation carried on for the purpose of eliciting incriminating statements, no statement made by the accused under these circumstances may be used against him at a criminal trial if the accused has not been permitted to consult with his lawyer and the police have not advised him of his absolute constitutional right to remain silent. The Court's findings of fact bring the petitioner's case within the rule announced in Escobedo with the exception that, unlike Escobedo, petitioner did not retain or request counsel.

The Court has reviewed the petition, respondent's return, the memoranda filed by the parties and the Court's findings of fact and concludes that the decision in this case depends on the answers to two questions: (1) Does Escobedo v. State of Illinois, supra, require that petitioner request and be denied the assistance of counsel at the accusatory stage of the proceedings in order that statements made to the police be excluded at trial?

(2) Assuming a request for counsel is not necessary and petitioner has not been advised of his rights under Escobedo, does the constitutional principle announced in that case operate retroactively?

For the reasons to be set forth below this Court concludes that although a request for counsel is not necessary Escobedo may not be applied retroactively to affect decisions which became final prior to the date Escobedo was rendered.

Whether the right to counsel at the accusatory stage of the proceedings depends on a request for counsel is a vexing question. Although in Escobedo the accused made the request, that opinion offers no certain guide as to whether the request is necessary. There has been a split of authority on this question.[1] Indeed, the Supreme Court has denied certiorari in a case where a state court held the request was necessary[2] and in another case where a state court held it was not necessary.[3]

■ In the absence of a definitive answer by the United States Supreme Court, this Court must turn to the decisions of the Court of Appeals for the Ninth Circuit. In Wright v. Dickson, 336 F.2d 878, 882 (9th Cir. 1964), the Court said in analyzing Escobedo:

"As Justice White pointed out in dissent, it makes no difference whether appellant asked to consult retained counsel or to be provided with the assistance of appointed counsel, nor, indeed, whether he requested counsel at all, except as the latter fact might bear upon waiver."

This language has not been expressly repudiated by the Court of Appeals.[4]

1. See e.g., United States ex rel. Russo v. State of New Jersey (3rd Cir. 1965), 351 F.2d 429 [request not necessary]; United States v. Childress, (7th Cir. 1965) 347 F.2d 448 [request necessary].

2. People v. Hartgraves, 31 Ill.2d 375, 202 N.E.2d 33 (1964), cert. denied 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965).

3. People v. Dorado, 62 A.C. 350, 42 Cal. Rptr. 169, 398 P.2d 361 (1965); cert. denied 85 S.Ct. 1793 (1965).

4. In Nelson v. People, 346 F.2d 73, May 26, 1965, the Court of Appeals for the Ninth Circuit had before it a habeas corpus petition from a state prisoner raising a search and seizure issue. It is clear from the record in that case and the opinion in People v. Nelson, 218 Cal. App.2d 359, 32 Cal.Rptr. 675 (1963) that Nelson did make incriminating statements to the police after arrest. After concluding its lengthy discussion on the search and seizure issue of the Court closed its opinion with a brief remark that there

Therefore, this Court concludes that in petitioner's case his failure to request counsel was not fatal.

A suggested short answer to whether Escobedo is retroactive is that the Supreme Court framed the rule of that case in terms of the Right to Counsel guaranteed by the Sixth and Fourteenth Amendments citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). (See Escobedo v. State of Illinois, supra, 378 U.S. at 491, 84 S.Ct. 1758.) Gideon has been applied retroactively by the Supreme Court in several instances. See Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed. 2d 650 (1964); Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed. 2d 41 (1963); see also United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2d Cir. 1964). Therefore, it would appear that Escobedo is also retroactive. Indeed, the Court of Appeals for the Ninth Circuit has apparently concluded as much in United States ex rel. Walker v. Fogliani, 343 F.2d 43 (9th Cir. 1965).

In Walker, petitioner was convicted in 1961 by a Nevada state court of first degree murder. The conviction was affirmed by the Supreme Court of Nevada in November 1962 Walker v. State of Nevada, 78 Nev. 463, 376 P.2d 137 and certiorari was denied by the United States Supreme Court in October 1963, 375 U.S. 882, 84 S.Ct. 153, 11 L.Ed.2d 112. In a petition for writ of habeas corpus filed in the federal district court, petitioner alleged, inter alia that at the time of his interrogation by Nevada authorities he had requested to no avail the assitance of counsel. The district court denied the petition in February 1964 approximately four months before the decision in Escobedo was rendered. The Court of Appeals reversed and remanded the case to the federal district court directing that court to stay the proceedings pending a determination by the Nevada state courts on the applicability of Escobedo to the allegations raised by the petitioner. And in this connection the Court concluded:

" * * * the courts of Nevada are entitled, in our judgment, to have the first opportunity to consider the problem which has now arisen on account of the decision in Escobedo, which, analyzed in connection with the decision in Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, should, without doubt, operate retroactively in the federal courts to protect a right which is assured by the Federal Constitution." (343 F.2d at 47).

This decision would seem to foreclose any argument that Escobedo was not intended to operate retroactively—at least in this circuit.

The recent decision of the United States Supreme Court in Linkletter v. Walker, 85 S.Ct. 1731 (1965), however, precludes the facile invocation of the right to counsel language in Escobedo and the dictum in United States ex rel. Walker v. Fogliani, supra. In Linkletter the Court held that Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), rendering inadmissible in state courts evidence seized in violation of the Fourth and Fourteenth Amendments, did not operate retroactively so as to vitiate convictions final before Mapp. Linkletter is the most recent pronouncement of the Supreme Court on the retroactivity of overruling constitutional decisions. This Court cannot ignore its dictates insofar as they have a bearing on the retroactivity of Escobedo.

In Linkletter, the Court adopted the premise that the Constitution neither requires nor prohibits retroactive application of new constitutional rules. Linkletter v. Walker, supra, 85 S.Ct. at 1738.

---

were no facts in the record making Escobedo applicable. An inference could be drawn from the record presented in the two Nelson decisions that request for counsel had not been made and that the Court of Appeals found this omission fatal. It must be assumed, however, that the Court was aware of its language in Wright v. Dickson, supra, and would have expressly repudiated it if this were the import of its dictum in Nelson.

"Once the premise is accepted * * * we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Linkletter v. Walker, supra, at 1738. Elsewhere the Court said: "* * * we must look to the purpose of the Mapp rule; the reliance placed upon the Wolf doctrine; and the effect on the administration of justice of a retrospective application of Mapp." Linkletter v. Walker, supra, at 1741.

After a review of the history of search and seizure law the Court concluded that the purpose of the exclusionary rule announced in Mapp was "* * * to deter the lawless action of the police and to effectively enforce the Fourth Amendment." Linkletter v. Walker, supra, at 1742. Recognizing that it had given retroactive application to constitutional interpretations of relatively recent vintage [e. g. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)], the Court thought that giving Mapp retroactive application would not serve the purposes of the rule announced in that case. The misconduct of the police could not be repaired; the victim's privacy could not be restored. There being no likelihood that illegally seized evidence was unreliable, there was no question of it being used to convict innocent people. Moreover, in reliance on Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), state courts for years had been allowing the admission of illegally seized evidence. A retroactive application of Mapp, under these circumstances, would place a heavy burden on the administration of justice. "To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice." Linkletter v. Walker, supra, 85 S.Ct. at 1742.

■ In short, if state law enforcement officials, in reliance on a long history of Supreme Court decisions, pursue a course of conduct resulting in the admission of evidence at a trial, which the Supreme Court later declares is in violation of the Constitution, and if the evidence acquired as a result of such conduct is unlikely to convict an innocent defendant, a newly announced interpretation of the Constitution will not be applied retroactively.

To what extent are the dictates of Linkletter applicable to Escobedo v. State of Illinois, supra? Although Escobedo purports to be grounded on the Right to Counsel guaranteed by the Sixth and Fourteenth Amendments, a closer examination reveals that it is unlikely that the Court intended it to be a right to counsel case in the same sense that Gideon v. Wainwright, supra, is. For there is no suggestion in Escobedo that the mere denial of counsel at the accusatory stage, absent the introduction of an incriminating statement elicited as a result of that denial would be grounds for reversal.[5] Since it is unlikely that the mere denial of counsel at the accusatory stage, without more, was intended to have the same effect as denial in a Gideon situation, whether Escobedo should be applied retroactively depends on the applicability of the rationale of Linkletter to the purposes underlying the Escobedo decision.

Manifestly the main purpose of Escobedo was to deter the police from abridging a defendant's constitutional rights in the interrogation room. But in the interrogation room, at the accusatory stage of the proceedings, what did the Supreme Court conceive the function of an attorney to be?

■ One function that an attorney can serve in such cases is to protect the defendant from coercion—both psychological and physical. Presence of counsel in the interrogation room would remove any doubt as to the voluntariness of any statements made by the accused. The Court's holding that the right to

---

5. See In re Lopez, 62 A.C. 380, 389, N. 12, 42 Cal.Rptr. 188, 398 P.2d 380 (1965).

counsel attaches "* * * when the process shifts from investigatory to accusatory—when its focus is on the accused and *its purpose is to elicit a confession*" (emphasis added) (Escobedo v. State of Illinois, supra, 378 U.S. at 492, 84 S.Ct. at 1766) suggests a concern for protecting the accused from coercion. "We have learned the lesson of history * * * that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses * * *." Escobedo v. State of Illinois, supra, at 488–489, 84 S.Ct. at 1764. The extensive quotations from Wigmore emphasizing "compulsory disclosure" and Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) discussing "extorted" confession leave little doubt that Escobedo was intended, in part, as a prophylactic against coercion in the interrogation room. Escobedo v. State of Illinois, supra, 378 U.S. at 489–490, 84 S.Ct. 1758.

Another function of counsel at the accusatory stage of the proceedings is to advise the defendant how to answer questions and when to remain silent. Even if coercion is absent a defendant cannot be expected to know what answers he gives to his interrogators can be incriminating. See Escobedo v. State of Illinois, supra, at 486, 84 S.Ct. 1758.

Finally, even with an intelligent waiver of counsel, Escobedo requires that the defendant be advised of "his absolute constitutional right to remain silent". Escobedo v. State of Illinois, supra, at 491, 84 S.Ct. at 1765. For "* * * no system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens' abdication through unawareness of their constitutional rights." Escobedo v. State of Illinois, supra, at 490, 84 S.Ct. at 1764.

The conclusions that can be drawn from Escobedo are that it was intended as a prophylactic against coerced confessions and confessions, although otherwise voluntary, made in ignorance of the constitutional right to remain silent.

To what extent does the decision in Linkletter compel a similar conclusion in Escobedo? Linkletter appears to prescribe a balancing test for the retroactive application of overruling constitutional decisions: The Court should balance the reliability of evidence acquired as a result of conduct later constitutionally proscribed against the effect of a retroactive application of an overruling constitutional decision on the administration of justice.

Prior to Escobedo the Supreme Court had refused to adopt the rule that a defendant had the right to counsel during the accusatory stage of the proceedings. In 1958 the Supreme Court, in two coerced confession cases, rejected such a rule in Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) and Cicenia v. La Gay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958). Until Escobedo the Court had focused its attention on whether a confession was coerced in the circumstances of the case. A denial of assistance of counsel was merely one of the factors to be considered in determining whether a confession was voluntary. Likewise, the law did not impose a duty upon law enforcement officials to advise an accused that he had an absolute right to remain silent. It is against this background that the Court must weigh the effect of a retroactive application of Escobedo on the administration of justice.

Prior to Escobedo, law enforcement officials were reasonably entitled to believe that they need not advise an accused of his right to counsel and his right to remain silent at the accusatory stage of the proceedings just as state courts were entitled to rely on Wolf v. People of State of Colorado, supra, and admit illegally seized evidence. To the extent that reliance by law enforcement officials on a body of constitutional law is deemed important by Linkletter, a much stronger case justifying that reliance is made out in a case in which they fail to advise an accused of his rights under Escobedo. For in the illegal search and seizure case

law inforcement officials knew their conduct was illegal. Wolf v. People of State of Colorado, supra, did not sanction that conduct. In the interrogation room, on the other hand, there was no reason to think, before Escobedo, that failure to advise an accused of his rights was illegal.

Granting that Escobedo intended to remove any lingering doubts about the voluntariness of confessions elicited in the absence of counsel, nevertheless, wherever a claim of coercion was interposed before Escobedo there were judicial remedies available to the accused. Whatever defects existed in the manner by which courts determined whether confessions were voluntary prior to Escobedo, and whatever defects in those procedures Escobedo intended to cure, the risk is insubstantial that a confession, judicially determined to be voluntary, contributed to the conviction of an innocent defendant. Likewise, in regard to the Supreme Court's concern that a defendant be advised of his right to remain silent, the risk is insubstantial that an otherwise voluntary confession, made in ignorance of this right, contributed to the conviction of an innocent defendant.

Under these circumstances the prophylactic effect of Escobedo should not be applied retroactively.[6] Such a ruling would thwart rather than further the administration of justice and the integrity of the judicial process. For pre-Escobedo confessions, judicially determined to be voluntary, and, therefore presumably reliable, would have to be excluded at a subsequent re-trial of a defendant who was not advised of his rights.[7] The passage of time will have dimmed the memory of witnesses; indeed, it is likely that in many cases witnesses will no longer be available. Other evidence may have been destroyed. To apply Escobedo retroactively "does nothing to punish the wrong-doing official [who at the time had no reason to think his conduct was illegal] while it may, and likely will, release the wrong-doing defendant. * * *" Irvine v. People of State of California, 347 U.S. 128, 136, 74 S.Ct. 381, 385, 98 L.Ed. 561 (1954) cited with approval in Linkletter v. Walker, supra, 85 S.Ct. at 1739. The purposes of Escobedo " * * * will not be served by the wholesale release of the guilty" (Linkletter v. Walker, supra, at 1742) who were not advised of their rights under Escobedo.

In short, the considerations impelling the Supreme Court to withhold retroactive application of Mapp v. Ohio, supra, are equally applicable to a pre-Escobedo voluntary confession. Accordingly, this Court concludes that Linkletter v. Walker, supra, compels the conclusion that Escobedo v. State of Illinois, supra, does not operate retroactively to affect convictions final before that decision.

The petition for writ of habeas corpus is denied, the order to show cause discharged and the proceedings herein dismissed.

---

6. A similar conclusion was reached by the California Supreme Court In re Lopez, 62 A.C. 380, 42 Cal.Rptr. 188, 398 P.2d 380 (1965). Although that decision was rendered before Linkletter, it anticipates Linkletter and is based largely on the rationale of that case.

7. In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the Court overruled its decision in Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953) and declared unconstitutional the New York procedure for dealing with allegedly coerced confessions. Although Jackson was applied retroactively (without discussion) that case is distinguishable from the instant case. For Jackson does not forever exclude confessions subjected to the defective New York procedure. It requires merely that the question of voluntariness be resubmitted to the state court and decided in accordance with the procedures outlined in that opinion.