Application of Percy DeTORO for a writ of habeas corpus.

Civ. A. No. 16804.

United States District Court
D. Maryland.
Nov. 16, 1965.

William J. McCarthy, Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Franklin Goldstein, Asst. Atty. Gen., for respondent.

NORTHROP, District Judge.

Percy DeToro was sentenced to death on July 3, 1961, for the knife slaying of his paramour. He had been found guilty of first degree murder after a court trial in the Criminal Court of Baltimore City.

The issue raised by DeToro in this petition for a writ of habeas corpus is the admissibility in evidence of a written statement made by him shortly after his arrest and while he was being interrogated, the pertinent part of which reads:

"It looked like to me that she was trying to make a pass at me with the scissors and I struck her with the paring-knife."

Counsel stipulate that the statement was given under the following circumstances:

1. DeToro was advised that the statement must be free and voluntary;

2. He had not been advised by anyone of a right to counsel;

3. He did not have nor did he consult with counsel;

4. He did not know that counsel could be present at the taking of the statement;

5. He did not request counsel nor did he request to contact or be contacted by anyone; and

6. He had been previously tried and convicted of another serious crime and had been represented by counsel at that trial.

In addition, it is conceded that the statement was voluntarily given.

DeToro's trial took place March 21, 1961. The State's case rested mainly on the testimony of two witnesses who had been in the apartment at the time of the murder. In his defense, DeToro decided not to take the stand, but instead chose to rely solely on his statement, which the defense produced (although it was formally introduced by the State).

The conviction was affirmed by the Maryland Court of Appeals and DeToro petitioned this court for a writ of habeas corpus. He is now represented by the same able attorney who counseled him in that prior habeas corpus action.[1]

This court held a hearing in the present habeas corpus petition on October 21,

---

1. The question involved there was whether the right to counsel attaches at a preliminary hearing when a "not guilty" plea is entered. This court, in denying that petition, found that where such a plea is filed, the preliminary hearing in Maryland is not a critical stage of the criminal proceedings; thus, the right to counsel does not attach. Application of DeToro, 222 F.Supp. 621 (D.Md.1963), aff'd sub nom. DeToro v. Pepersack, 332 F.2d 341 (4 Cir.), cert. denied 379 U.S. 909, 85 S.Ct. 198, 13 L.Ed.2d 181 (1964).

1965, at which time the transcript of De-Toro's original trial, the stipulations, and his statement were introduced. DeToro came directly to this court, bypassing state post-conviction proceedings. The principal question he raises is whether the failure to advise him that he had a right to counsel rendered his statement inadmissible.

For reasons to be discussed, the court finds that DeToro has exhausted his state remedies.

With respect to the right-to-counsel issue, DeToro relies on the holdings in United States ex rel. Russo v. State of New Jersey, 351 F.2d 429 (3 Cir. 1965) and People v. Dorado, Cal., 42 Cal.Rptr. 169, 398 P.2d 361 (1965), cert. denied, 381 U.S. 946, 85 S.Ct. 1793, 14 L.Ed.2d 710 (1965). Both cases extend the decision in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964).

In Escobedo, the suspect was arrested and immediately informed that he had been accused of shooting the deceased. En route to police headquarters, he requested to consult with his attorney, whom he had previously retained. During the interrogation period that followed, he renewed his request but was told that his lawyer did not want to see him. In fact, however, his attorney, who was present at police headquarters, had demanded to see him but was prevented from doing so. Escobedo later confessed. The Supreme Court held that under these circumstances, where there also had been a failure to effectively advise Escobedo of his right to remain silent, the confession was inadmissible.

▆ The express holding is that where the investigation has focused on a particular suspect who is in police custody, and the police are interrogating him with the aim of eliciting a confession, and, most importantly, the suspect has requested and been denied counsel and has not been effectively advised of the right to remain silent, the confession obtained is inadmissible. The Court has specifically stated that the presence of these five elements establishes a clear violation of at least the Sixth Amendment right to the assistance of counsel.

Both Russo and Dorado hold that a suspect, arrested and questioned as was Escobedo, need *not* request counsel in order to be protected by the Sixth Amendment, since, by virtue of that amendment, the right to counsel attaches at every critical stage, and the interrogation stage is a critical one. Since the right does attach automatically, it is the duty of the police to inform the accused of this right, and if he is indigent, also to inform him that he has a right to have counsel appointed for him.

Most federal and state courts do not agree with this extension. Maryland is among those states. See Jenkins v. State, 238 Md. 451, 209 A.2d 616 (1965); Cowans v. State, 238 Md. 433, 209 A.2d 552 (1965); Green v. State, 236 Md. 334, 203 A.2d 870 (1964); Sturgis v. State, 235 Md. 343, 201 A.2d 681 (1964). Thus, even though DeToro has not raised this issue in the state courts, it would serve no useful purpose to require him to do so. The interests of comity are not furthered by futile proceedings which merely delay resort to this court. See, e. g., Hayes v. Boslow, 336 F.2d 31 (4 Cir. 1964); Evans v. Cunningham, 335 F.2d 491 (4 Cir. 1964). Therefore, this court must determine the correctness of petitioner's primary contention: that the failure to advise a suspect of his right to counsel renders the statement inadmissible.

In his well-reasoned dissent in Escobedo, Mr. Justice White anticipated cases such as Russo and Dorado and predicted that later decisions would go even further by excluding from evidence "all admissions obtained from an individual suspected of crime, whether involuntarily made or not". Escobedo v. State of Illinois, 378 U.S. at 495, 84 S.Ct. at 1767. He accused the majority of creating this situation by moving back the right to counsel from the time of indictment or preliminary hearing to that nebulous stage when an investigation focuses on a suspect. Law-enforcement bodies, the bench, and the bar—all of which are

seeking means to stem the surging crime rate—are alarmed at the implications of such cases as Russo and Dorado and of Mr. Justice White's predictions.

Since the beginning of the Supreme Court's recent decisions on criminal procedure, great concern has been voiced regarding their effect upon law enforcement; but none of the cases has caused as much concern and given rise to such heated controversy as has Escobedo. Two extremes have developed: one group, although admitting that constitutional protection should be afforded all criminal defendants, feels that the limits of such protection have been defined by cases such as Escobedo and Mapp (Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). To extend these cases would proscribe practices which frequently expose the criminal and, at the same time, present little likelihood of convicting the innocent.

The opposing group looks solely at the Bill of Rights, reading into it a code of conduct much beyond its intent. That group ignores the fact that the Preamble to the Constitution assures that the "blessings of Liberty" be available not only to the unsavory, but also to the law-abiding, whose liberties and freedoms must be protected from unlawful intrusions. In this group's desire to cure all ills of society by court decision, the co-equal constitutional purposes to "insure domestic Tranquility", "promote the general Welfare", and "establish Justice" are overlooked.

Supreme Court decisions in White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), reflect unquestioned values with respect to the right to counsel. Also, various forms of coercion employed to extract confessions have long been proscribed: physical brutality in Brown v. State of Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L. Ed. 682 (1936), threat of mob violence in Payne v. State of Arkansas, 356 U.S.

560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), thirty-six consecutive hours of questioning in Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944), threats against defendant's family in Harris v. State of South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (1949), and deception in Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); as have searches and seizures under certain circumstances. See, e. g., Mapp v. Ohio, supra, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), corrected the procedural defect that allowed juries, as the triers of fact, to determine also whether the confession obtained was voluntary.

Such activities and practices have caused the Supreme Court as well as lower courts, state and federal, to vacate the resultant convictions even though independent corroborative evidence has often left little doubt as to the correctness of the verdict. The balance has been struck with these decisions. Any adjustment in favor of the suspect will lead courts to a more ready absolution of the guilty.

Also, it will be noted that even in England, which adopted the Judges' Rules, seriously limiting the questioning of suspects in custody, the Rules are being observed more in their breach than in their application, for now the admissibility of confessions obtained in a questioning session is left to the judge's discretion. The reason for this relaxation is that the former method was found to impose an unreasonable restriction on the police in bringing criminals to book.

It is for these reasons that most federal and state courts have found it necessary to confine Escobedo to its facts and circumstances. In doing so, this court follows the recent cases of United States v. Childress, 347 F.2d 448 (7 Cir. 1965); Davis v. State of North Carolina, 339 F.2d 770 (4 Cir. 1964); Stevens v. Warden, 238 F.Supp. 334, D.Md., 1965; United States ex rel. Conroy v. Pate, 240 F.Supp. 237 (N.D.Ill.1965). Because the

two Escobedo elements are missing here—request for counsel and an ineffective warning as to the accused's right to remain silent—Russo and Dorado cannot be followed.

But, assuming that this court follows Russo and Dorado and decides that the failure to advise one of the right to counsel violates the Sixth and Fourteenth Amendments, it is not persuaded that these cases apply retroactively. Escobedo has specifically been held not to be retroactive. United States ex rel. Walden v. Pate, 350 F.2d 240 (7 Cir. 1965); Carrizosa v. Wilson, 244 F.Supp. 120 (N.D.Cal.1965); United States ex rel. Conroy v. Pate, 240 F.Supp. 237 (N.D.Ill.1965); In re Lopez, Cal., 42 Cal. Rptr. 188, 398 P.2d 380 (1965); State v. Johnson, 43 N.J. 572, 206 A.2d 737 (1965); Commonwealth v. Senk, Pa., 212 A.2d 222 (1965); as has Russo,[2] Wade v. Yeager, 245 F.Supp. 67 (D.N.J.1965).

Particularly interesting is the Lopez case, because it was decided by the California Supreme Court on the same day that Dorado was decided, and with the same judge speaking for that court. Also noteworthy is the Carrizosa case, which is in accord with Russo and Dorado, but finds Escobedo to be prospective only.

The third, and most significant, case on this point is United States ex rel. Conroy v. Pate (supra). There the court found that the petitioner, who at the time of those proceedings had been incarcerated for twenty-eight years, had, after arrest, asked and been denied the opportunity to call his mother. He had wanted to ask her to obtain counsel for him. He later confessed. The court granted the writ, applying the case retroactively, but not on the basis of Escobedo.

"While we are not prepared to apply Escobedo v. [State of] Illinois retroactively today, we cannot ignore the fact that denial of access to counsel and to family members can under some circumstances constitute a very real factor when considering coercion." Id. 240 F.Supp. at 243.

The court found such other circumstances to have existed and decided that, considering the totality of circumstances, the confession was unreliable and, for that reason, vacated the conviction. The point here is that the court, in an Escobedo-like factual situation, felt that retroactivity could not be grounded on the Escobedo decision, but rather must be based on the denial of a Fifth Amendment right.

Since the case of Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which held that Mapp v. Ohio, supra, was to be given prospective application only, no case has applied Escobedo retroactively. Noting that the issue of retroactivity is relevant only when the conviction has become final, the Court in Linkletter stated that finality is established where the judgment of conviction has been rendered, the availability of appeal has been exhausted, and the time for petition for certiorari has elapsed. Under this standard, De-Toro's conviction became final in 1962, two years before Escobedo, and, therefore, is dependent upon the decisions relating to Escobedo's retroactivity.

Prior to Linkletter, several of the circuits were in conflict as to the retroactivity of Mapp. The Fourth Circuit in Hall v. Warden, 313 F.2d 483 (4 Cir. 1963) and Walker v. Pepersack, 316 F.2d 119 (4 Cir. 1963) and the Ninth in People of State of California v. Hurst, 325 F.2d 891 (9 Cir. 1963), held Mapp to be retroactive, whereas the Second in United States ex rel. Angelet v. Fay, 333 F.2d 12 (2 Cir. 1964), Fifth in United States ex rel. Linkletter v. Walker, 323 F.2d 11

---

2. Russo is somewhat puzzling in this respect. The case arose via collateral proceedings; the decision thus appearing to have been given retroactive effect. However, upon rehearing, on October 13, 1965, the Third Circuit refused to consider the retroactivity issue because it had not been raised below. Had they originally intended to apply Russo retroactively, it would seem that they would not have dodged the issue in this way.

(5 Cir. 1963), Seventh in Sisk v. Lane, 331 F.2d 235 (7 Cir. 1964), and Tenth in Gaitan v. United States, 317 F.2d 494 (10 Cir. 1963), felt that Mapp was to be applied prospectively only. Even though the conflict has not yet arisen as to Escobedo's retroactivity, it appears that here too the Supreme Court will be forced to erase all doubts on this matter.

In comparing Escobedo and Mapp, this court finds some basic similarities. First, prior to Mapp and with respect to the search-and-seizure issue, law-enforcement bodies had been relying on Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), which held that although evidence seized in violation of the search-and-seizure provisions of the Fourth Amendment, was inadmissible in the federal courts, it need not be excluded in the state courts. Mapp overruled Wolf holding that the exclusionary rules were equally applicable to the states.

Experiencing a similar history was the right-to-counsel issue, which, prior to Escobedo, was settled by the case of Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958). That case holds that the denial of a request for counsel does not, *ipso facto*, establish a constitutional violation, but such a denial must be considered in light of the circumstances of the case.

 . [2] This court feels that to hold these cases retroactive now would punish the states whose officers attempted to act in accordance with the then-applicable law, in that such a holding would create a chaotic condition in the courts and would, generally, "tax the administration of justice to the utmost". Linkletter v. Walker, 85 S.Ct. at 1742.

In addition, as Linkletter points out, the purpose of Mapp, to deter lawless action of the police and to effectively enforce the Fourth Amendment, would not be furthered by the retrospective application of the case.

"There being no likelihood that illegally seized evidence was unreliable, there was no question of it being used to convict innocent people." Carrizosa v. Wilson, 244 F.Supp. at 124.

The main purpose of Escobedo appears to be "to deter the police from abridging a defendant's constitutional rights in the interrogation room". Ibid. It may also be, simply, to assure that the accused is represented by counsel at every stage of the proceedings against him. In either event, in Escobedo,

"the risk is insubstantial that a confession, judicially determined to be voluntary, contributed to the conviction of an innocent defendant." Id. at 126.

In both cases, therefore, the innocent are amply protected. Thus, it seems that the respective purposes will not be served by the "wholesale release of the guilty victims". Linkletter v. Walker, 85 S.Ct. at 1742, cited by Carrizosa v. Wilson, 244 F.Supp. at 126.

The Supreme Court decision in the Escobedo case gave rise, perhaps unexpectedly, to a multitude of side issues. One of these, a recent addition to the increasing number of Escobedo-caused dilemmas, is presented herein, namely, what constitutes a confession? The specific problem in this petition is whether DeToro's statement, which was obviously intended to have an exculpatory effect but which contains inculpatory elements, is tantamount to a confession. DeToro incriminated himself, it is contended, by placing himself at the scene of the crime and admitting the actual slaying. The same contention was raised successfully in the recent Maryland case of Green v. State, 236 Md. 334, 203 A.2d 870 (1965), and the petitioner relies upon that case here.

There is one great difference, however. DeToro, after consulting with his attorney, agreed with him that as a matter of strategy the safest course would be to refrain from taking the stand and, instead, to rely solely upon the statement. This strategy had a three-fold purpose: (1) It allowed the equivalent of testimony to come into evidence while pre-

cluding the possibility of cross-examining the witness; thus, the petitioner was saved the embarrassment of having to inform the trier of fact, in this case a judge, of a previous conviction for a serious crime. (2) It introduced the possibility that the slaying was in self-defense. And (3) it raised some doubt on the existence of a first-degree murder.

 I do not feel that, under these circumstances, this statement should be treated as a confession. It is not the type of utterance to which Escobedo. is directed, since it was the most exculpatory statement that DeToro could have offered, for in the apartment at the time of the slaying were two other people who could attest to DeToro's presence there. Thus, an alibi would be unsupportable. DeToro also must have realized that any denial of the stabbing would have been refuted by witnesses who would state that DeToro was in the same room with the victim at the time of the slaying and had, moments before the incident, picked up a knife from the kitchen table. Self-defense was the only defense remaining. At the close of the State's case, the prosecution had established guilt beyond a reasonable doubt. In the hope of introducing doubt, the defense offered this statement. It was the only defense. Because DeToro was convicted in spite of it, he now claims that it was a confession.

In holding otherwise, I find support in the recent Fourth Circuit case of White v. Pepersack, 352 F.2d 470, 4 Cir., 1965. There, the petitioner, accused of homicide, admitted at trial, upon taking the stand, that he had shot the victim. He offered no explanation other than intoxication and anger at a third party, whom he did not harm. The lower court held this statement to be a judicial confession, which is similar to a voluntary guilty plea in that it forecloses a collateral attack based upon earlier defects in the proceedings.

In reversing, the Fourth Circuit held that White did not knowingly confess guilt of first-degree murder. The court held:

"The defendant * * * [who] justifies his conduct as self-defense or mitigates it or controverts any of the essential elements of murder in the first degree, cannot be said to have voluntarily and knowingly confessed * * * [to] the maximum charge he is contesting." Id., 352 F.2d at 473.

Thus, not every statement which is at least partially inculpatory can be equated with a confession. In this context, then, DeToro's statement was not a confession, and Escobedo cannot apply. To retry him without it would strip him of his sole defense.

For the foregoing reasons, it is this date of November, 1965, ordered:

1. That the petition for a writ of habeas corpus be and the same hereby is denied;

2. Leave to file said petition in forma pauperis be granted; and

3. That the clerk mail a copy of this opinion and order to the petitioner, to attorney for petitioner, and to the Attorney General of Maryland.