# BULL *v.* STATE

[No. 277, September Term, 1964.]

*Decided May 27, 1965.*

*Motion for rehearing filed June 26, 1965, denied June 30, 1965.*

The cause was argued before HAMMOND, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Wylie L. Ritchey* and *James A. Gede* for appellant.

*Loring E. Hawes, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *T. Bryan McIntire, State's Attorney for Carroll County,* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

The appellant, Norburt Milner Bull, was convicted of the crime of barn burning under Code (1957), Art. 27, sec. 7, by Chief Judge Boylan, sitting without a jury in the Circuit Court for Carroll County, and was sentenced to pay a fine of five hundred dollars and costs. He appeals, claiming that an oral and a written confession made by him should not have been admitted in evidence, and that there was insufficient proof of the *corpus delicti,* independent of the confessions, to sustain the conviction.

About 6 P.M. on April 11, 1964, a fire occurred in the lower floor of a bank barn owned by the appellant. This floor was used for the housing of chickens. Smoke from the fire was noticed by Harvey J. Lippy, a contract purchaser of the property, while he was driving by the barn with some relatives. Lippy, who was a volunteer fireman, and his father-in-law began to extinguish the blaze with a garden hose while Mrs. Lippy called the fire department. Because of the efforts of these people and the fire department, the fire did not spread to any other parts of the barn.

State Trooper Shower, who went to the barn to investigate, testified that upon arrival he observed a burned electric light drop cord hanging from a rafter to the floor of the chicken compartment. The upper end of the cord was plugged into an electric outlet and the bottom end was charred and was lying in some burned straw. A partially burned burlap bag lay nearby. Part of the wooden floor had burned. The trooper further testified he discovered that straw on the floor above where the

chickens were housed was "saturated" with a liquid which had the odor of gasoline and that the gasoline covered an area of about 20 to 30 feet across the floor to some baled hay. There was gasoline on the baled hay and some had run down through the floor into the chicken pen. Trooper Shower also stated that he found a five gallon gasoline can outside the barn. He testified over objection that in his opinion the fire had started in the chicken compartment and was caused by the electric light drop cord. The State's evidence also showed that the barn and contents were fully insured and that the appellant had, prior to the fire, signed a contract of sale with Lippy and his brothers and had transferred the property to them sometime before the trial.

Bull was not seen on the premises at the time the fire was discovered and upon his return that night he was taken into custody by Trooper Shower, after an examination of the barn by the two men. Bull denied any connection with the fire. He was taken to the State Police barracks in Westminister at about 9:45 P.M. and was questioned until approximately midnight, but he continued to deny that he had set or caused the setting of the fire. He spent the night in the barracks. According to Trooper Shower, on the next day Bull stated that he wanted to see him. The trooper, who was elsewhere, was notified and went to the barracks at approximately 3:15 P.M. He said that when he saw Bull, the latter orally admitted within a few minutes that he had set the fire.

The trooper apparently was not in any hurry to reduce the confession to writing. He said that after the oral admission he left Bull and told his lieutenant and sergeant of it. A few minutes later he returned to Bull and told him he would like to get a written statement but had some other duties he must attend to first. After doing so, he said, he returned about two and one-half hours later, just before 6 P.M., and began to type the statement as Bull uttered it, in narrative form. They were interrupted by a call to supper, which they ate with other personnel at the barracks, and thereafter the writing of the statement was concluded. The trooper said he read it to Bull and then handed it to him to read, after which he asked Bull whether it was true. He said Bull answered in the affirmative

and signed the statement willingly. It was witnessed by the trooper and by Sergeant Hahn.

After hearing Trooper Shower's testimony, as well as testimony from Bull concerning the circumstances surrounding the giving of the oral and written confessions, Judge Boylan admitted the latter in evidence over the defendant's objection. The trooper had already testified to the oral confession, over objection.

In the written confession Bull stated that he set the barn on fire because he was sorry he had sold the property and "I thought that burning the barn would cancel the sale of the property and the fire insurance money would erect a new chicken house." He said he poured gasoline from the can "in a stream" over the upper barn floor and "I left a lighted bulb fall into the chicken manure which contained straw * * * I figured it would catch the straw." He then said he left the property and "I figured it would catch on fire when I was away from there."

The evidence introduced by the defense, including the testimony of the defendant himself, was calculated to show that Bull had left the farm at 4:15 on the afternoon of the fire after feeding the chickens and that he did not return until 9:45 P.M. when he met the State Trooper. The appellant testified that from the farm he went to his mother's home for supper, then went to see his "tax man" at about 5:30 P.M. for a 6 o'clock appointment, and after that went to his girl friend's home in Towson. These persons also testified and substantiated the fact that he had been with them on the evening in question. (In the written confession, Bull stated that he went to the barn and set the fire after eating at his mother's house, and before going to see his tax consultant.)

The appellant first complains that the oral and the written confessions were improperly admitted in evidence on the grounds that there was no proof that he was advised of his constitutional rights to remain silent and to counsel and that the confessions were involuntarily made because of certain promises made to him by Trooper Shower. He makes no claim that he ever asked to consult with counsel. Although he says he was not allowed to use the telephone, he admitted that he only requested to

make two calls (neither of which was to an attorney) and that the police made both of these calls for him. In regard to the appellant's right to remain silent, the facts indicate that the oral confession was spontaneous, as was the statement held admissible in *Stewart v. State,* 232 Md. 318, 325, 193 A. 2d 40 (1963), and the written confession shows that the appellant was told "you have a perfect right not to answer" any questions. But even if it were assumed that this was not a sufficient appraisal of his right to remain silent, the failure to so advise alone would not render the confession inadmissible. *Green v. State,* 236 Md. 334, 341, 203 A. 2d 870 (1964). Since neither this Court nor the Supreme Court of the United States has held that the mere failure to advise an accused of his right to remain silent or of his right to counsel makes a confession subsequently given inadmissible in evidence, *Cowans & Hayes v. State,* 238 Md. 433, 209 A. 2d 552 (1965), it follows that if the confession was voluntarily made, it was properly admitted in evidence. *Prescoe v. State,* 231 Md. 486, 191 A. 2d 226 (1963).

The appellant states in his brief that "the confession was made in order to secure his release and upon the assurance of the Trooper [Shower] that no charges would be placed against him as it was his own barn and no crime had been committed and the statement was required only in order to clear the police record," and he testified that such statements were made to him by the trooper before each confession. At the argument before us he claimed that the State had not effectively rebutted this testimony. However, the record shows otherwise. When Trooper Shower testified, before Bull took the stand to attack the voluntariness of the confession, he stated several times during direct examination by the State that he had made no promises, threats or inducements. Then on cross examination he was asked the following question: "Trooper, during the whole course of the time that this man was in custody which was from 9:45 P.M. on the night of the 11th until, I believe, it was Sunday night? * * * 12th? Had you made any statements whatsoever to this defendant in regards to the fire; that if he told you what had happened that nothing would happen to him? That, after all, it was his barn? That it was something minor and you

just wanted to get to the bottom of it, let me finish, and that it would go a lot easier on him if he would go ahead and sign it and let him go? Did you make that statement at any time, Trooper?" To which the Trooper answered: "I definitely did not." In addition, three other State police officers who had questioned the appellant briefly, or had on occasion been present when the appellant and Trooper Shower were together, followed the appellant to the stand and denied categorically that any force, threat, promise or inducement had been offered to the appellant by Trooper Shower, by themselves or by anyone else in their presence or to their knowledge. Thus the question was one of the credibility of the witnesses, which was for the judge as trier of the facts to resolve. We cannot say he was clearly wrong in finding that the confession was voluntarily made. The situation before us is readily distinguishable from *Streams v. State,* 238 Md. 278, 208 A. 2d 614 (1965), since in that case certain statements of the accused in regard to involuntariness were not contradicted by the State's witnesses.

The final contention of the appellant is that there was insufficient proof of the *corpus delicti* independent of the extra-judicial confessions. We do not agree. As we stated in *Johnson v. State,* 238 Md. 140, 144, 207 A. 2d 643 (1965) : "* * * if there is evidence, independent of the confession, which relates to and tends to establish the *corpus delicti,* the conviction is justified." Trooper Shower's testimony as to the presence of gasoline wide-spread over the floor of the barn and over the straw and baled hay, and as to the electric light cord lying in the burned straw, was sufficient to meet the test. We think there was sufficient evidence from which the trial judge could reasonably conclude, as he did, that the *corpus delicti* had been proved. See *Jones v. State,* 237 Md. 628, 206 A. 2d 553 (1965) ; *Bollinger v. State,* 208 Md. 298, 117 A. 2d 913 (1955), and cases cited.

> *Judgment affirmed; appellant to pay the costs.*