Nathaniel WADE, Petitioner,

v.

Howard YEAGER, Warden, New Jersey State Prison, Respondent.

Civ. A. No. 420-65.

United States District Court
D. New Jersey.

Aug. 27, 1965.

WORTENDYKE, District Judge.

Petitioner (Wade) is serving a life sentence in the custody of Respondent upon his conviction March 31, 1961 of first degree murder in the Passaic County Court of the State of New Jersey. His previous petition for writ of habeas corpus to this Court, Docket C–1032–63, 245 F.Supp. 62, was dismissed by my order of March 5, 1964. He has not appealed from that order.

On April 23, 1965 Wade filed in this Court a second petition for a writ of habeas corpus which makes the following assertions:

(1) He was denied his constitutional right to the assistance of counsel;

(2) There was a systematic exclusion of negroes from the grand and petit juries in the County in which he was tried;

(3) His confession was involuntary;

(4) His conviction was founded upon the fruits of an illegal search and seizure; and

(5) His indictment was illegal because it resulted from an illegally obtained confession.

Wade's presently pending petition discloses that he has sought and been denied post-conviction relief pursuant to N.J. R.R. 3:10A–1 et seq. The record in those proceedings discloses that petitioner therein contended (1) that there had been a systematic exclusion of negroes from the grand jury and trial jury panels in the County of trial; (2) that the statement elicited from him and used as evidence against him was obtained after he had been assigned counsel; (3) that his confession was inadmissible in evidence because induced by the administration of a "truth serum"; and (4) that evidence obtained by the New York Police Department was illegally admitted upon his trial, because obtained by illegal search and seizure. The same contentions are presently urged on the pending petition, in addition to petitioner's attack upon the indictment, which may not be urged in these proceedings, Holt v. United States, 1910, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397; Lawn v. United States, 1958, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321. In granting the State's motion to dismiss the post-conviction proceedings on February 19, 1965, Judge Kolovsky, of the New Jersey Superior Court, held each of the foregoing grounds there urged by Wade untenable.

In disposing of Wade's "conclusory statement" that negroes were systematically excluded from grand and trial jury panels in the County of trial, the learned Judge said:

"our rules require that challenges to the array be made before the trial begins * * * More important there is nothing in this petition for post conviction relief other than the conclusionary [sic] statement that there was such exclusion. No facts are given in support of those statements. I would not be warranted in setting this petition down for hearing on those charges for several reasons: In the first place, this issue as to the alleged systematic exclusion of jurors should have been raised before or at least at the trial. That the experienced trial counsel would have raised that issue if there were any factual basis therefor is clear from what occurred at and before the trial. The trial record discloses that the defense attorneys during the selection of the jury charged that there had been discrimination in selecting jurors who were picked from the highways and byways.

That issue was decided adversely to defendants. Counsel's failure to assert that there was exclusion of negroes from the panels of grand jurors and petit jurors selected by the Jury Commission was obviously deliberate."

That Court correctly pointed out that the procedural requirements of the State rule (supra) relating to challenges to the array of jurors were valid, and that failure of timely compliance therewith precluded any right of subsequent attack. Reece v. State of Georgia, 1955, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77; Coleman v. State of Alabama, 1964, 377 U.S. 129, 84 S.Ct. 1152, 12 L.Ed.2d 190. Wade did not criticize the composition of either the grand or the petit jury in his case either on appeal to the New Jersey Supreme Court from his conviction, or in his previous habeas corpus petition to this Court. The analysis of the State Court record which induced me to deny Wade's petition in C–1032–63 clearly discloses that he had ample opportunity to attack, but expressed no objection to the composition of his grand and petit juries. His present contention is an unwarranted afterthought. As was said in Townsend v. Sain, 1963, 372 U.S. 293, at p. 319, 83 S.Ct. 745, at p. 760, 9 L.Ed. 2d 770:

> "We are aware that the too promiscuous grant of evidentiary hearings on habeas could both swamp the dockets of the District Courts and cause acute and unnecessary friction with state organs of criminal justice, while the too limited use of such hearings would allow many grave constitutional errors to go forever uncorrected. The accommodation of these competing factors must be made on the front line, by the district judges who are conscious of their paramount responsibility in this area."

I give respectful heed to this admonition by rejecting Wade's first ground asserted in his New Jersey post-conviction petition and reasserted here. It is presently asserted too late, after the many pretrial, trial, post-conviction and appellate opportunities which petitioner has had, for its presentation in the State courts and in this Court, without availing himself of them.

■ As borne out by the record, petitioner was represented by privately retained, experienced counsel on arraignment and throughout trial, appeal and post-conviction proceedings. He now contends, however, that he was without the assistance of counsel when he gave an incriminating statement in the course of police investigation following arrest. He urges Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, as authority for his contention that his rights under the Sixth and Fourteenth Amendments were violated because he was refused an opportunity to consult counsel and was not warned of his constitutional right to remain silent prior to and during the interrogation, and that the statement extracted from him was wrongfully admitted upon his trial. The 4956 page State Court record, and its summary by the New Jersey Supreme Court, State v. Wade, 1963, 40 N.J. 27, 190 A.2d 657, supports my finding, expressed in my opinion and order filed March 5, 1964, on Wade's previous petition for the writ, that his statement to the police was properly admitted as a voluntary confession. The sole ground upon which Wade assigned error on appeal, with respect to the admission of his confession into evidence, was that it "was involuntarily made while under the influences of a demerol injection administered to alleviate pains in his leg; * * *." (40 N.J. 28, 29, 190 A.2d 658). He may not urge that ground in support of his present petition. 28 U.S.C. § 2244. See Sanders v. United States, 1963, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148. Denial of his right to counsel before and during the making of the confession was asserted neither during the trial nor upon the appeal. That contention was first made in the post-conviction proceedings under

N.J.R.R. 3:10A–1 et seq. and there over-ruled on motion. Upon the authority of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, the Third Circuit Court of Appeals decided in Unit-ed States ex rel. Russo v. State of New Jersey, and United States ex rel. Bisignano v. State of New Jersey, 1965, 351 F.2d 429, that "under certain circum-stances, the right to counsel attaches at the interrogation level" and "where the right attaches any confession obtained in the absence of counsel must be suppressed independent of any issue of the voluntari-ness of the confession" irrespective of whether the prisoner requested counsel at the interrogation stage. An effective waiver of the accused's right to counsel at the interrogation stage can exist only where the record shows, or there is an allegation and evidence that he was of-fered counsel, but intelligently and un-derstandingly rejected the offer.

Whether the police interrogation of petitioner was accusatory instead of in-vestigatory in purpose, and whether the statement obtained from him in the course thereof was tainted by an uncon-stitutional deprivation of his right to counsel are questions whose answers de-pend upon a disclosure of the circum-stances surrounding the making of the statement. The facts upon which such circumstances may be ascertained have neither been pleaded nor offered in evi-dence. The pending application for the writ, insofar as it relates to petitioner's contention that he was denied his con-stitutional right to the assistance of counsel, is merely a discussion of Esco-bedo and of the opinions of other courts in which Escobedo has been cited, with-out mention of the facts upon which peti-tioner would parallelize the case at bar with those in Escobedo or Russo-Bisig-nano (supra).

■ In his decision upon the motion to dismiss the State post-conviction pro-ceedings, Judge Kolovsky stated that he had examined such portions of the trial record as he deemed necessary for the disposition of the motion, and that it revealed that "the issue of the voluntari-ness of the confession was fully litigated, fully dealt with" and that "[a]lthough this present issue was apparently not raised on appeal, it could have been. The alleged error, the alleged misconduct of the police in taking a statement despite the fact that defendant had an attorney, even if it were the fact, is an issue which should have been raised on direct appeal. It is not a subject for post con-viction relief" because "Escobedo was not the law at the time of the trial in this case." In footnote 4 on page 484 of the opinion in Escobedo, on page 1761 of 84 S.Ct., Mr. Justice Goldberg quotes from the Court's opinion in Haynes v. State of Washington, 373 U.S. 503, at 515, 83 S.Ct. 1336, at 1344, 10 L.Ed.2d 513, which stated " 'It is well settled that the duty of constitutional adjudication resting upon this Court requires that the question whether the Due Process Clause of the Fourteenth Amendment has been violated by admission into evidence of a *coerced* [emphasis supplied] confession be the subject of an *independent* deter-mination here, see, e. g., Ashcraft v. [State of] Tennessee, 322 U.S. 143, 147–148, 64 S.Ct. 921, 923, 88 L.Ed. 1192; "we cannot escape the responsibility of making our own examination of the rec-ord," Spano v. [People of State of] New York, 360 U.S. 315, 316, 79 S.Ct. 1202, 1203, [3 L.Ed.2d 1265].' " Ashcraft was decided in 1944, long before the trial of the present petitioner. The responsi-bility of "independent determination" recognized in Ashcraft rests initially up-on this Court where the question is pre-sented by a petition for the writ. Peti-tioner's right to challenge the validity of his conviction on the constitutional ground that he was denied counsel dur-ing police accusatory interrogation would not be defeated solely by his fail-ure to take an appeal from the judgment. Williams v. Kaiser, 1945, 323 U.S. 471, 477, 65 S.Ct. 363, 89 L.Ed. 398; Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. I have not overlooked the

decision on June 3, 1965 of the Eighth Circuit Court of Appeals in State of Minnesota ex rel. Holscher v. Tahash, 346 F.2d 556 in which the Court found insufficient, for determination of the question whether Escobedo applied, the record in the court below, and therefore remanded for findings of fact and conclusions of law. In so doing, however, that Court directed (p. 557) that "[N]o implication should be made from our remand that Escobedo and Jackson [Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908] are to be applied in retrospect. We do not reach that question." My present decision is based upon the pending petition and the record in the State Court proceedings and not upon evidence presented upon a hearing. I have reviewed and discussed the State record in my opinion and order dismissing Wade's earlier petition.

■ Petitioner's reliance upon Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, for support of his contention that his conviction resulted from the admission in evidence of the "fruits of an illegal search and seizure" is misplaced. The decision in Mapp does not operate retrospectively. Linkletter v. Walker, June 7, 1965, 381 U.S. 618, 85 S.Ct. 1731. Moreover, the sufficiency of the evidence before the State grand jury may not be tested via habeas corpus in this Court. 28 U.S.C. § 2241; Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.

By his present contention that he was not represented by counsel during the police interrogation of March 22, 1960 at police headquarters in Paterson, New Jersey, Wade asks this Court to set aside his conviction upon a ground which he failed to urge either on trial or on appeal, and which would not have sufficed for such purpose at either of those times. Escobedo was decided by the Supreme Court on June 22, 1964. Russo was decided by the Third Circuit Court of Appeals on May 20, 1965. Wade's conviction took place on March 31, 1961. It was affirmed on appeal by New Jersey's highest Court (40 N.J. 27, 190 A.2d 657) on May 6, 1963. Neither on trial nor on appeal did Wade urge against the admission of his confession the ground which he now asserts. Indeed, he could not have successfully urged that ground prior to the decision in Escobedo. Cicenia v. La Gay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523; Crooker v. State of California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448. Even in his previous petition for the writ to this Court, filed December 5, 1963 (dismissed March 5, 1964) he urged only the grounds assigned upon his appeal.

■ The Fourteenth Amendment does not guarantee against State action all that would be a violation of the original Bill of Rights if done by the Federal Government. Palko v. State of Connecticut, 1937, 302 U.S. 319, 323, 58 S.Ct. 149, 82 L.Ed. 288. In Gideon v. Wainwright, 1963, 372 U.S. 335, 352, 83 S.Ct. 792, 801, 9 L.Ed.2d 799, Mr. Justice Harlan's concurring opinion stated: "In what is done today I do not understand the Court to depart from the principles laid down in Palko v. [State of] Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, or to embrace the concept that the Fourteenth Amendment 'incorporates' the Sixth Amendment as such."

Much has been said and written in recent years respecting the tendency of courts to reverse convictions for asserted unconstitutional denial of due process to criminal defendants. The language of the Constitution has remained unaltered, except by duly adopted amendments, since that instrument of Government became effective; but the interpretation of its words and meaning and its application to varying facts has changed with the long succession of judicial decisions adhering to the doctrine of *stare decisis*. Law enforcement authorities, as well as trial courts, are entitled and indeed *required* to apply, in the performance of their respective functions, the *meaning of due process* recognized as applicable to a situation which the court of last resort has most recently given under similar

circumstances. If, years after a trial in which due process has been accorded pursuant to then judicially accepted standards, a conviction may be upset because of a decision induced by a new judicial philosophy applied by a pioneering judge or judges, no finality may be assured in the determination of the guilt or innocence of a person who violates the criminal laws. Thus the sanction of such laws may be *pro tanto* impaired, if not actually destroyed.

The Supreme Court said in Crooker v. State of California, 1958, 357 U.S. 433, at p. 437, 78 S.Ct. 1287, at p. 1290, 2 L.Ed. 2d 1448:

> "The bare fact of police 'detention and police examination in private of one in official state custody' does not render involuntary a confession by the one so detained. Brown v. Allen, 1953, 344 U.S. 443, 476, 73 S.Ct. 397, 417, 97 L.Ed. 469. Neither does an admonition by the police to tell the truth, * * * nor the failure of state authorities to comply with local statutes requiring that an accused promptly be brought before a magistrate. * * *

> "Petitioner's claim of coercion, then, depends almost entirely on denial of his request to contact counsel. This Court has not previously had occasion to determine the character of a confession obtained after such a denial. But we have held that confessions made by indigent defendants prior to state appointment of counsel are not thereby rendered involuntary, even in prosecutions where conviction without counsel would violate due process under the Fourteenth Amendment. Brown v. Allen, 1953, 344 U.S. 443, 474–476, 73 S.Ct. 397; * * *.

> "Under these principles, state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits, * * * but also if he is deprived of counsel for any

part of the pretrial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' * * * The latter determination necessarily depends upon all the circumstances of the case."

The quoted language states the law as it was when the present petitioner was tried and when his trial judge was called upon to rule upon his contention that his statement or confession to the police, made prior to indictment, was involuntary. In Escobedo, decided more than three years after Wade's conviction and six years after Crooker, the Supreme Court described Crooker as merely rejecting "the absolute rule * * * that 'every state denial of a request to contact counsel [is] an infringement of the constitutional right *without regard to the circumstances of the case,'* " and substituting the rule that "state refusal of a request to engage counsel violates due process not only if the accused is deprived of counsel at trial on the merits, * * * *but also if he is deprived of counsel for any part of the pretrial* proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.' * * *. The latter determination necessarily depends upon all the circumstances of the case." (Emphasis supplied.)

As disclosed in the opinion of the New Jersey Supreme Court in State v. Wade, 1963, 40 N.J. 27, 190 A.2d 657, which affirmed Wade's conviction, petitioner was informed, while he was still at the hospital in New York City suffering from a fractured leg sustained in his attempt to avoid arrest, that extradition proceedings would be necessary and he was requested to sign a waiver. He expressed reluctance to comply and requested and was granted the opportunity to speak with his New Jersey attor-

ney, who advised him to waive extradition, which he accordingly did. Wade was thereafter transported to police headquarters in Paterson, New Jersey, where he conferred with his wife and a friend, and received medical attention. Wade testified upon his trial that his retained attorney, one Morley, was present at Paterson police headquarters following the departure of Wade's wife and friend, but prior to the interrogation of which he now complains. Although petitioner's wife testified upon the trial, neither the friend, Jones, nor his attorney, Morley, was called to testify respecting the circumstances surrounding his interrogation at police headquarters. Petitioner failed to avail himself of the opportunity to present the testimony of his attorney respecting the reason for the attorney's failure to remain during the interrogation. Thus the record conclusively discloses that Wade was not "deprived of counsel for any part of the pretrial proceedings"; nor was his confession involuntary. It is inconceivable that, having conferred with his own attorney prior to the interrogation, he was uninformed with respect to his right to remain silent. In Russo v. State of New Jersey, supra, decided more than four years after Wade's conviction, the Third Circuit Court of Appeals extended Escobedo to a case in which the defendant had not *requested* counsel, and held that "[a]t every other stage of the proceedings at which a right to counsel attaches, the right does not depend on a request for counsel nor can it be presumed that failure to request counsel constitutes a waiver of that right." Russo is obviously inapposite to the case at bar because Wade *had* counsel and consulted with counsel before interrogation; also because Russo, as well as Escobedo, may not be retrospectively applied. In Linkletter v. Walker, June 7, 1965, 381 U.S. 618, 85 S.Ct. 1731, 1742, which held Mapp v. Ohio, 367 U.S. 643, p. 637, 81 S.Ct. 1684, 6 L.Ed.2d 1081, not retrospectively applicable, Mr. Justice Clark, writing for the majority, said:

"Finally, there are interests in the administration of justice and the integrity of the judicial process to consider. To make the rule of Mapp retrospective would tax the administration of justice to the utmost. Hearings would have to be held on the excludability of evidence long since destroyed, misplaced or deteriorated. If it is excluded, the witnesses available at the time of the original trial will not be available or if located their memory will be dimmed. To thus legitimate such an extraordinary procedural weapon that has no bearing on guilt would seriously disrupt the administration of justice."

In Russo, Chief Judge Biggs, speaking for the Court (at p. 434, of 351 F.2d) said:

"As to Russo, were we confronted only with the police activity at the police station [the type of interrogation of which Wade presently complains] we could conclude without difficulty that Russo's statement there made, the equivalent of a confession, was voluntary."

Therefore, when Wade was interrogated without the presence of counsel, his voluntary statement so elicited was admissible under both State and Federal law. The record of his trial discloses that he received constitutional due process. The views expressed by the majority in Escobedo could not impair the "dueness" of the process which Wade enjoyed. Escobedo, and therefore Russo, must be restricted to the particular facts of each case.

For the reasons aforesaid, I find that Wade's pending petition fails to set forth allegations sufficient to show that he is in custody in violation of the Constitution of the United States. This Court is therefore without power to grant the writ sought. 28 U.S.C. § 2241(c) (3). The petition is accordingly dismissed.