## HYDE *v.* STATE

[No. 28, September Term, 1965.]

*Decided December 15, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, OPPENHEIMER, BARNES and MCWILLIAMS, JJ.

*William E. Brannan* for appellant.

*Robert F. Sweeney, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Frank H. Newell, III, State's Attorney for Baltimore County,* on the brief, for appellee.

HAMMOND, J., delivered the majority opinion of the Court. OPPENHEIMER and MCWILLIAMS, JJ., dissent in part. Dissenting opinion by OPPENHEIMER, J., at page 673, *infra.*

After John N. Hyde had been convicted in 1961 of murder

in the first degree by Judge Raine, sitting in the Circuit Court for Baltimore County without a jury, he appealed to this Court from the judgment and sentence of life imprisonment, claiming that he was legally insane when the crime occurred, that the evidence was insufficient to support a finding of premeditation and, finally, that both an oral and a written confession were improperly admitted against him because, in the words of Hyde's brief on appeal as quoted by Judge Prescott for the Court in affirming the conviction in *Hyde v. State*, 228 Md. 209, 217, *cert. denied*, 372 U. S. 945, the "refusal of the police to obtain for [him] the counsel he requested and their failure to advise him of his right to remain silent violated [his] right to due process of law."

We found that Hyde was not insane, the evidence was sufficient, and that everything material and pertinent in the confession which Hyde himself wrote out had been said orally to the police before the confession was written and that the police had told the court from the stand, without any objection having been made, all that Hyde had told them orally. We further noted (at page 222) that "* * * Hyde, himself, later took the stand and voluntarily testified to everything [material] in the written confession," and said (at page 224) :

> "We turn now to the objection to the written confession. The record, we think, amply sustains the trial judge in his finding that the confession was freely and voluntarily made, and not coerced. Here, we do not have the usual factors that have been held to render a confession coerced, such as an ignorant, illiterate accused, easily open to suggestion; physical force; prolonged and uninterrupted interrogation; shuttling of the prisoner from one place to another for the purpose of confusing him; failing to provide food, etc. The only complaints advanced by the appellant are that the police (although not actually preventing his obtention of counsel) did not actually assist him in getting counsel, and the police failed to tell him he did not have to answer questions."

The determinations below and here, that Hyde's confession was admissible, were in accord with the established law of Mary-

land which makes voluntariness in fact, the test. *McCleary v. State,* 122 Md. 394, 400; *Mefford and Blackburn v. State,* 235 Md. 497, 511-12, *cert. denied,* 380 U. S. 937; *Ramsey v. State,* 239 Md. 561, 565; *Bull v. State,* 239 Md. 101, 104-05; *Cowans and Hayes v. State,* 238 Md. 433; *McCoy v. State,* 236 Md. 632, *cert. denied,* 380 U. S. 986. In *Jenkins v. State,* 238 Md. 451, 459, we said:

> "If the confession was freely and voluntarily given, as the judges and the jury had a right to find from the testimony was the fact, it would not be inadmissible under Maryland law merely because the confessor either was not warned of his constitutional right to remain silent or was without the advice of counsel, or both."

In August 1962 Hyde filed an application for post conviction relief, setting forth eight reasons why it should be granted including the claim of police refusal to allow him a lawyer and police failure to advise him of his constitutional right to remain silent. Judge Berry denied the application, after a hearing, on July 10, 1963, and Hyde sought leave from this Court to appeal.

On June 22, 1964, during the pendency of the application for leave to appeal, the Supreme Court announced *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, which held that where the police investigation had reached the point of focusing on a particular suspect and that individual is subjected to:

> "* * * a process of interrogations that lends itself to eliciting incriminating statements, [and] the suspect has requested and been denied an opportunity to consult with his lawyer [previously retained], and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon v. Wainwright,* 372 U. S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal

trial." *Escobedo v. Illinois,* 378 U. S. 478, 491, 12 L. Ed. 2d 977, 986.

Although we found that seven of Hyde's contentions did not warrant post conviction relief and denied leave to appeal as to them, *Hyde v. Warden,* 235 Md. 641, we concluded in that opinion that as a result of *Escobedo* there should be further findings of fact on the point of the confessions and remanded the case to provide a basis for answers to the following questions:

1. "[C]an the admissibility of Hyde's statements and confession be considered as a ground for relief under the Maryland Post Conviction Procedure Act by reason of decisions of the Supreme Court of the United States rendered after its admissibility had been upheld by this Court and the conviction affirmed on the basis of the law as we then understood it to be?"
2. If the answer is in the affirmative, "* * * do any supervening decisions of the Supreme Court * * * indicate that admission of the statements and confession made by the applicant was in contravention of his constitutional rights?"
3. "[A]re these supervening decisions retroactive?" *Hyde v. Warden,* 235 Md. 641, 649.

We directed the trial court to make a speedy "determination of the facts with regard to the applicant's *desire* or *request* or *requests* for counsel and police action or inaction with regard thereto" (emphasis added), ordered the case transferred to our regular appellate docket as soon as the determinations below had been filed with us, and further ordered the case set for argument as soon thereafter as practicable after the filing of briefs.

Judge Jenifer, after a hearing on October 9, 1964, decided that Hyde did not request (construing "request" to mean "to ask for" or "to solicit") the assistance of counsel prior to giving the oral statement "and not until after completing two pages of the written statement when, at the top of page three, he

said: 'May I consult an attorney?' " He found that Hyde's previous references to counsel "had been in the form of a desire or 'wish to have' or 'would like to have' legal advice." Judge Jenifer further concluded (a) that Hyde's "requests" for counsel were not refused but for a time partially ignored, or in Hyde's words "it was either ignored or evaded," and (b) he was finally told by Inspector Story that he could call a lawyer when he finished his confession and was asked to finish it and that then he "voluntarily completed page three of the statement."

It is once more entirely clear to us, as *Hyde v. State,* 228 Md. 209, held, that Hyde's oral statement and his written version thereof were in fact freely and voluntarily made and were therefore admissible under Maryland law as it stood when they were made, when he was tried and when his conviction was affirmed on appeal. We shall assume, without deciding, that had the rule enunciated by the Supreme Court in *Escobedo* been controlling in Maryland before Hyde's conviction had become final, both his oral and written statement would have been inadmissible without regard to voluntariness in fact because before he made them he was not told of his right to remain silent and had made known to the police his desire to have legal advice and had not been given the opportunity to secure it.

We hold, nevertheless, that the ruling below that Hyde was not entitled to post conviction relief must be affirmed because, in our view, the doctrines of *Escobedo* were not intended to be, and are not to be, applied retrospectively.

Both before and after the decision of the Supreme Court in *Linkletter v. Walker,* 381 U. S. 618, 14 L. Ed. 2d 601, every court which has discussed the problem, as far as we have been able to determine, has concluded that *Escobedo* does not apply to convictions which had become final before it was handed down.

In January 1965, about four months before *Linkletter* was announced, the Supreme Court of California in Bank decided *In re Lopez,* 398 P. 2d 380. There, in a reasoned and persuasive opinion (handed down on the same day on which that court handed down *People v. Dorado,* 398 P. 2d 361, which extended *Escobedo's* scope by holding that a mere failure by the police

to tell a suspect of his right to counsel or of his absolute right to remain silent invalidated his confession), Justice Tobriner for the court held that neither *Escobedo* nor *Dorado* were to be applied to cases which had become final prior to the date the Supreme Court of the United States rendered the *Escobedo* decision. There were three bases of decision. First, although *Escobedo* sought to provide a suspect the opportunity to obtain counsel at the accusatory stage and so sought to eliminate conditions which invited confessions coerced in fact, the ruling does not require a retroactive application—"We cannot say that the possibility of abuse in the past is such that the *voluntary* statement then elicited must now be exercised." *In re Lopez, supra* at 386. Second, new interpretations of the Constitution have been, and should be, applied retroactively only in those situations in which such new rules protect the innocent defendant against the possibility of conviction of a crime he did not commit; "* * * the fact that defendant was denied counsel under *Escobedo* does not affect the issue of guilt." *Id.* at 383. The California court reasoned on this point:

"The Escobedo rule did not, however, emanate from the inherent unreliability of the confessions introduced in the trials of the past or from the uncertainty of the guilt of those who had thus confessed; it emerged from the belief that secret interrogation was the source of coercion, that the opportunity for the presence of counsel would end the secrecy and that the exclusion of the confession obtained without such opportunity would deter those tactics. The court sought to discourage oppressive police practices; it did not seek to undo the procedures of yesterday, which despite their undesirability did not necessarily cause the conviction of the innocent.

"The same considerations which induce the denial of a retrospective application of the rule against the introduction of illegally seized evidence support a similar result here. The chief purpose of the rule in Mapp v. State of Ohio (1961) 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, was to preclude police conduct

which ignored 'the right to privacy embodied in the Fourth Amendment' and to make certain that 'the right to be secure against rude invasions of privacy by state officers * * * no longer * * * remain[ed] an empty promise.' (Id. at p. 660, 81 S. Ct. at 1694.) Although all courts do not agree, many have held that Mapp cannot be the basis for collateral attack on final judgments because the purpose of elevating the exclusion of illegally procured evidence to a constitutional requirement lies in deterring unconstitutional police searches." *Id.* at 386-87.

Third, "* * * a newly defined constitutional right which involves the correction of future practices rather than erroneous convictions of the past should not be subject to rigid retroactivity." *Id.* at 388. The court felt that if *Escobedo* compelled retroactive collateral attack it "* * * could well impede further developments in constitutional law." *Id.* at 390. It went on to say:

"The absolute application of new interpretations, which on the surface appears as an instrument of fair play, in reality may stand as a formidable barrier to a dynamic application of constitutional standards. If every change must ipso facto be applied to all prior proceedings, no matter how ancient, future change may be put in jeopardy." *Id.* at 390.

Not overlooked were the practical effects retroactive application would produce:

"Unlimited retroactive application of Escobedo would result in the reconsideration of countless cases that were correctly decided under the law in force at the time of trial; in many of such cases witnesses and evidence would no longer be available. Many hardened and dangerous criminals would glean the greatest profit from unlimited retroactivity; they serve lengthy sentences imposed long ago; their cases thus offer the least likelihood of successful retrial. To require a general release of prisoners of undoubted guilt would be

to cripple the orderly administration of the criminal laws." *Id.* at 390.

The Supreme Court of New Jersey reached the same result as did California in *State v. Johnson,* 206 A. 2d 737, also decided before *Linkletter.* It held that convictions of felony murder, proved in part by confessions held to be voluntary in fact, which had become final well before *Escobedo,* were not to be overturned under the rules announced in *Escobedo.* The Court assumed that the allegations of the convicted men that they were denied counsel and not advised of their right not to talk would have made their confessions inadmissible under *Escobedo,* and that *Escobedo* established a new rule of constitutional law which does not depend on voluntariness and stated that the question before it was whether *Escobedo* was retroactive in application.

In holding that it was not, the court distinguished *Gideon v. Wainwright,* 372 U. S. 335, 9 L. Ed. 2d 799 (the federal habeas corpus case which invalidated a state criminal conviction where the indigent accused had been denied a lawyer at his trial), which has been given by the Supreme Court and other courts the retroactive effect we gave it in *Manning v. State,* 237 Md. 349. The New Jersey opinion pointed out that *Gideon* itself was a collateral attack while *Escobedo* came up to the Supreme Court from a judgment on direct appeal. It saw no intimation in the majority or dissenting opinions in *Escobedo* that it was to be retroactive and, unlike *Gideon,* there has been no subsequent indication that it was. *Gideon,* said the New Jersey Court, dealt with a situation where the reliability of the judicial determination of guilt was challenged—("* * * Gideon expresses judicial realization that denial of counsel during judicial proceedings has the clear capacity to result in the conviction of a guiltless man." *State v. Johnson, supra* at 743). The court continued:

> "Where the reliability of the guilt-determining process is seriously impugned, there is good reason for applying the new rule to a case already decided. It would offend our sense of justice to continue to incarcerate a convicted man where subsequent considera-

tions cast grave doubts upon the reliability of the determination of his guilt. But where the conviction was obtained as a result of a procedure not considered fundamentally unfair at that time, and subsequent judicial decisions cast no substantial doubts upon the reliability of the determination already made, no compelling reason exists for disturbing a decision no longer subject to direct appeal." *Id.* at 744.

Justice Proctor, for the court, went on to point out that nothing in the Constitution of the United States requires the automatic and general application of a new rule of law, including constitutional law, to invalidate decisions already made. He said:

"It is now recognized that judicial decision-making is often creative and requires that judges, although in a strictly limited sense, 'legislate.' See Cardozo, The Nature of the Judicial Process, 124-132 (1921) ; * * * Thus, contemporary judicial decisions announcing a new rule of law are the product, not only of a re-evaluation of abstract principles of justice but also of practical considerations of current economic, social, and political realities, and the effect of the rules announced in those decisions upon current institutions. Constitutional law is no exception. * * * In determining whether to give retroactive effect to a new rule of law, a court's consideration should be correspondingly broad." *Id.* at 742-43.

On the practical and policy aspects of the question, the court said:

"Society does have an interest in preventing its courts from being burdened with a flood of relitigation. * * * Furthermore, retroactive application of a new rule of law undermines the authoritative nature of final judicial decisions. Society reasonably expects that when a man is convicted of a crime by a method not considered unfair according to the rules of law then in effect, that conviction will stand. Therefore, unless some

countervailing considerations of 'the deepest senti-
ments of justice' compel otherwise, a new rule of crim-
inal law should not be applied retroactively." *Id.* at
743.

It was noted that when *Gideon* was decided only a few states
denied counsel in serious cases but that almost all states per-
mitted the use of confessions voluntary in fact when *Escobedo*
was decided, so that the retroactive application of *Escobedo*
would invalidate far more convictions throughout the country
than *Gideon*.

Judge Marovitz, sitting in the District Court for the North-
ern District of Illinois, came to the same conclusion as Cali-
fornia and New Jersey in an opinion rendered before *Linklet-
ter*. See *United States v. Pate,* 240 F. Supp. 237.

On June 7, 1965, the Supreme Court announced its decision
in *Linkletter v. Walker,* 381 U. S. 618, 14 L. Ed. 2d 601, in
which it held that the rule established by *Mapp v. Ohio,* 367
U. S. 643, 6 L. Ed. 2d 1081 (that exclusion of evidence seized
in violation of the search and seizure provisions of the fourth
amendment was required of the states by the due process clause
of the fourteenth amendment), did not operate retrospectively
upon convictions finally decided prior to the *Mapp* case. There-
after, several courts have held *Escobedo* not to be retroactive
in application, in reliance in great part on *Linkletter*.

In *United States v. Pate,* 350 F. 2d 240 (7th Cir. 1965),
the court considered the habeas corpus petition of a prisoner
whose conviction became final in 1960 in a case in which the
court found he had been denied access to counsel and had not
been advised of his right to remain silent before he confessed.
Judge Kiley, for the United States Court of Appeals for the
Seventh Circuit, said:

> "The Supreme Court has determined the question of
> prospective or retrospective operation of a new con-
> stitutional rule upon the basis of the purpose of the
> rule. Where the rule in question goes to the fairness
> of the trial, 'the very integrity of the fact-finding pro-
> cess,' as the Supreme Court said in Linkletter, retro-
> spective application is called for, since doubt is cast on

the question of the defendant's guilt. In both Escobedo and Mapp, however, the reliability of the evidence was not questioned; the attack was on admissibility of the evidence because it was obtained in violation of a fundamental constitutional right. As Mr. Justice White pointed out in dissent in Escobedo, 'Escobedo's statements were not compelled and the Court does not hold that they were.' 378 U. S. at 498, 84 S. Ct. at 1769.

"Nothing expressed in either the Mapp or Escobedo opinion required retrospective application of the rule announced. The purpose of the Mapp and Escobedo rules is the deterrence of abuses by law enforcement officers. Experience had shown that the only effective means of enforcing compliance with the Fourth Amendment's prohibition against illegal searches and seizures was to render all evidence thus obtained inadmissible, and in Mapp the Supreme Court took that step. Escobedo was likewise the culmination of long experience with cases involving defendants who had been held and gave confessions without assistance of counsel. The administration of justice suffered from the difficulties for the trier of fact and for courts of review of determining from the conflicting testimony of the interested parties whether a confession was or was not voluntary; and a condition existed where ignorance of constitutional rights and absence of counsel operated to the prejudice of persons in custody. In order to put an end to a system so fraught with potential abuses, the Supreme Court in Escobedo decided to remove the incentive to deny an accused the right to counsel by rendering inadmissible any confession obtained while such denial was in effect. It is because of the similarity of purposes that we, as the Supreme Court did with the Mapp rule in Linkletter v. Walker, hold that the rule of Escobedo does not apply retrospectively." *Id.* at 242-43.

For similar holdings after *Linkletter,* see *Bell v. State,* 175 So. 2d 80 (Fla. Dist. Ct. App. 1965) ; *People v. Hovnanian,* 253 N. Y. S. 2d 241 (App. Div. 1964), *Carrizosa v. Wilson,*

244 F. Supp. 120 (N. D. Cal. 1965); *Wade v. Yeager*, 245 F. Supp. 67 (D. N. J. 1965); and *In the Matter of the Application of Percy DeToro for a Writ of Habeas Corpus*, 247 F. Supp. 840 (D. Md. 1965), reported in The Daily Record, December 4, 1965. See also Mishkin, *Foreword: The High Court, The Great Writ, and the Due Process of Time and Law*, 79 Harv. L. Rev. 56, 95, in which Professor Mishkin analyzes *Linkletter* and its rationale and consequences and concludes that on balance of reasons pro and con *Escobedo* should not be held to operate retroactively and predicts, cautiously, that the Supreme Court will agree.

In *Schowgurow v. State*, 240 Md. 121 (which held a provision of the Maryland constitution requiring a belief in God as a qualification for jury service invalid under the federal constitution), we embraced the view that there is no constitutional or legal requirement that every decision announcing a new rule of law, constitutional or otherwise, must be applied retrospectively, saying at page 132: "There is no decision of this Court, and we know of none of the Supreme Court, which prohibits our determination that, with the exception stated, our holding in this case shall not be retroactive." In the case now before us, we are persuaded by the authorities we have discussed and cited that not only is there no need or reason to hold that *Escobedo* should operate retrospectively on convictions that became final before it was announced, but that it would be unwise and undesirable that it should, and we hold, subject to possible later correction by the Supreme Court, that it does not.

The dismissal below of Hyde's application for post conviction relief will be affirmed.

*Order affirmed.*

OPPENHEIMER, J., filed the following opinion, dissenting in part, in which McWILLIAMS, J., concurred.

I agree with the majority that *Escobedo* should not operate retroactively on convictions that became final before it was announced and that it is unwise and undesirable that it should. But, in my opinion, *Escobedo* did not effect a change in the Maryland law applicable to this case. Under that law, on the

facts as we now have them, I believe that Hyde's confessions were not freely and voluntarily made and were, therefore, inadmissible.

On the remand of Hyde's petition for post conviction relief for further findings of fact, Judge Jenifer, in the Circuit Court for Baltimore County, found that, while Hyde did not ask for or solicit the assistance of counsel prior to giving his oral statement, he did at that time express a desire to consult counsel and his desire was ignored. In his opinion, Judge Jenifer stated that he was aware of the fact "that there is a minimal line of distinction between the words 'desire' and 'request'." All the members of this Court are in agreement that the legal effect of Judge Jenifer's findings is the same as though Hyde had requested the assistance of counsel before he made his oral confession, although no statement to this effect was deemed necessary in the opinion of the majority because of the conclusions therein set forth. As was stated in the first opinion on Hyde's application for post conviction relief, "the record on the original appeal indicates that the police did not advise the applicant of his right to remain silent * * *" *Hyde v. Warden*, 235 Md. 641, 650, 202 A. 2d 382 (1964).

In Hyde's appeal from his conviction, he contended that it was the refusal of the police to obtain the counsel he requested, in conjunction with the failure of the police to advise him of his right to remain silent, which violated his right to due process of law. The Court found to the contrary. *Hyde v. State*, 228 Md. 209, 217-218, 179 A. 2d 421 (1962), *cert. denied* 372 U. S. 945 (1963). The Court noted that no specific mention of any confession was made in connection with this contention. 228 Md. at 217. In the oral argument on the appeal, Hyde's counsel attempted to add to the contention in the brief by attacking the voluntariness of both the oral and written confession, but the Court held that the question was not properly before it under Maryland Rule 831 c 2 and c 4, 228 Md. at 218. The Court considered the circumstances of the two confessions but at that time did not have the benefit of the detailed findings of fact made by Judge Jenifer as to what occurred before Hyde made his oral statement. While the Court, on the appeal, emphasized the failure of Hyde's counsel to object to

the admission of the oral confession and stated that the subsequent motion to strike all of Hyde's oral statements was too broad, we have subsequently held that recent decisions of the Supreme Court of the United States on federal constitutional questions have required us to make changes in some of our previous holdings as to the questions which can be raised under post conviction proceedings. *Fennell v. Warden,* 236 Md. 423, 204 A. 2d 75 (1964); *Adair v. Warden,* 235 Md. 653, 202 A. 2d 764 (1964). "Some matters formerly treated as procedural, or mere rules of evidence, have now been elevated to the status of constitutional rights." *Ledbetter v. Warden,* 234 Md. 643, 644, 200 A. 2d 81 (1964).

In remanding Hyde's application for post conviction relief for findings of fact, the Court was concerned with the applicability and retroactivity of subsequent decisions of the Supreme Court, including *Escobedo.* In the opinion on that remand, the Court said that the attack on the oral statements and written confession in the appeal was based on lack of counsel and failure to advise Hyde of his right not to answer questions. 235 Md. at 648. In my opinion, the findings of fact of the court below on the remand, while made in connection with the applicability of recent Supreme Court decisions, cast a new light upon whether Hyde's confessions were in fact voluntary under the Maryland law. The question so presented is not the denial of counsel as such but the conjunction of the ignoring of Hyde's request for counsel and the failure of the police to advise him of his right to remain silent on the voluntariness of the confessions.

Hyde was tried on a capital charge. Under all the circumstances, I do not believe that the Court's decision on his appeal, which was primarily concerned with the effect of the failure of the police to provide counsel and with the admissibility of the written confession, bars him from a consideration of the basic constitutional question of whether his oral statement given shortly before the written confession was made voluntarily or was coerced.

The basic rule as to the admissibility of confessions has been too often enunciated by this Court to require citation of cases. Before a confession can be admitted in evidence, the State must

·show to the satisfaction of the court that it was the free and voluntary act of the accused; that no force or coercion was exercised by the officers obtaining the confession and no hope or promise was held out to cause the accused to confess. The burden is upon the State to show that the confession was voluntary. The principle rests upon the basic safeguard of individual liberty set forth in the Maryland Declaration of Rights and inherent in the Fourteenth Amendment to the federal Constitution that no man, in a criminal case, ought to be compelled to give evidence against himself.

In all the cases which have come before us involving the admissibility of a confession, we have looked to the specific facts and circumstances. We have consistently refused to fragmentize the fundamental principle into subsidiary rules. Absent a controlling decision of the Supreme Court of the United States to the contrary, in our decisions, we have manifested our belief that, properly applied, the general rule of itself protects the rights of the individual without undue restriction of the police investigation necessary for the protection of society.

Accordingly, we have held that a confession is not necessarily to be declared involuntary because of the absence of one or more concomitant circumstances. We have decided that, if the confession is found to have been freely and voluntarily given under the totality of the attendant circumstances, the affirmative advising of an arrestee of his right to counsel before the taking of a confession is not a prerequisite to its admissibility. *Cowans and Hayes v. State,* 238 Md. 433, 209 A. 2d 552 (1965). Even the denial of counsel, between the time of arrest and the time of confession, we have said, does not of itself affront due process because it does not necessarily indicate an overborne or compelled will. *McCleary v. State,* 122 Md. 394, 400, 89 Atl. 1100 (1914). See also *Mefford and Blackburn v. State,* 235 Md. 497, 511, 201 A. 2d 824 (1964), *cert. denied* 380 U. S. 937 (1965). Of itself, failure to apprise the arrestee of his right to remain silent does not render a confession inadmissible. *Bull v. State,* 239 Md. 101, 104-5, 210 A. 2d 396 (1965) and cases therein cited.

Nor does the absence of advice as to several of the arrestee's rights of itself render the confession inadmissible. In *Jenkins*

*v. State,* 238 Md. 451, 459, 209 A. 2d 616 (1965), as pointed out in the majority opinion, the Court said, "If the confession was freely and voluntarily given, as the judges and the jury had a right to find from the testimony was the fact, it would not be inadmissible under the Maryland law merely because the confessor either was not warned of his constitutional right to remain silent or was without the advice of counsel, or both." In *Jenkins,* however, the Court stated that the accused did not ask for an attorney then or later. In our decision affirming Hyde's conviction on appeal, we held that a failure of the police to obtain counsel for Hyde after he had said he did not think he would say more until he had consulted a lawyer, even combined with the failure of the police to tell him he did not have to answer questions, did not, of themselves, make the confession inadmissible. *Hyde v. State, supra,* at 225.

We have also pointed out, however, that while the absence of one or more of the circumstances to which reference has been made does not of itself make a confession inadmissible, its admissibility "may be affected by the presence or absence of particular factors." *Bagley v. State,* 232 Md. 86, 93, 192 A. 2d 53 (1963). The decisions to which reference has been made in this discussion illustrate that the absence of factors protective to the arrestee are often balanced by affirmative circumstances indicating the voluntariness of a confession. In *Cowans and Hayes v. State, supra,* the written confessions each contained statements that the persons being interrogated had been advised that what they said could be used for or against them in court. There was affirmative evidence as to a similar caution in *McCleary v. State, supra.* In *Mefford and Blackburn v. State, supra,* Mefford had been in touch with members of his family before his confession and the police testified that Blackburn had been advised of his rights either to talk, or, without prejudice, to remain silent. The police had made two calls at the appellant's request in *Bull v. State, supra,* and the written confession, made some time after the oral admission, showed the appellant was then told he had a perfect right not to answer any questions. In *Jenkins v. State, supra,* the appellant had been advised that what he said could be used for or against him in the criminal court. In all the cases, it is the totality of the cir-

cumstances to which we have looked, whether the confession has been held properly or improperly admitted.

As a confession has been held voluntary, despite the absence of a single factor or a combination of factors, so no single circumstance has been requisite to a finding that a confession was coerced. For example, in *Mercer v. State*, 237 Md. 479, 206 A. 2d 797 (1965), a confession was held improperly admitted because the testimony of the appellant that he was physically mistreated by two detectives was not contradicted by either of the persons named. In *Streams v. State*, 238 Md. 278, 208 A. 2d 614 (1965), no charge of physical force or mistreatment was made, but the appellant testified to threats and promises, and we held the State had not met the burden of showing the confessions were freely and voluntarily made, because it did not call the officers who the appellant claimed were guilty of the improper conduct. In *Combs v. State*, 237 Md. 428, 206 A. 2d 718 (1965), we held the testimony showed the appellant was physically hurt because he would not talk and was threatened by further confinement until he did talk. In *Thiess v. State*, 235 Md. 541, 201 A. 2d 790 (1964), there was no evidence of physical mistreatment, but we held the confesssion was improperly admitted because the claims of Thiess that he was not allowed to call his father or his lawyer and that he was told he would not be allowed to do so until he made a statement and was "charged" remained substantially unimpaired.

In the case now before us, there is no evidence whatsoever of the use of physical force. The interrogation of Hyde lasted only two and a half hours. While Hyde testified as to some threats and promises, that testimony was strongly contradicted by the police officers. Admittedly, however, before making his oral statement, Hyde was never advised that he had the right to remain silent, or that anything he said could be used against him in court, or that whatever he said must be free and voluntrary, or indeed, of any of his rights. His expressed desire to consult with counsel before he said anything further, (after he had admitted having been to the home of the deceased and that he did "something wrong") which was, in effect, a request for counsel, was ignored or evaded. Hyde testified, without contradiction, that he made his request "over and over and over

* * * I got tired of hearing myself say it." His statements that he was nervous and apprehensive and that his requests seemed to irritate the officers were not rebutted.

As has been said, the admitted failures of the police to advise Hyde of any of his rights and to permit him to talk with counsel before he gave the statement, of themselves, do not make his statement involuntary. The question, however, is whether, under all the circumstances, the State has met its burden of showing the statement was given voluntarily, and in determining that question, these factors must necessarily be considered, separately and in conjunction, in the light of the attendant circumstances.

That Hyde was nervous and apprehensive is not unusual. That he was interrogated first by two policemen and then by four, including some of high rank, and, that in the process, he was taken from one room to another, are not matters for criticism. Had he been advised, in one way or another, that he did not have to say anything, there would be no question, under the circumstances, of the voluntariness of what he did say. But whether or not he had the right to consult a lawyer before he made a statement, indubitably, he had the right to remain silent. Repeatedly, he made it clear to the interrogating officers that he wished to remain silent until he had a chance to talk to a lawyer, and, admittedly, he was not given that opportunity. His requests were ignored or evaded. Clearly, his desire not to answer questions or make a statement, at least until after consulting counsel, was expressed or inherent in every request he made. Whether, when he finally made his oral statement, he did so because he had been led to believe he would be detained without the chance to consult counsel until he answered questions, or whether he gave the statement because he was apprehensive of the effect of irritating the officers by his repeated request to remain silent until he was given the opportunity he asked, is immaterial. In either case, under all the circumstances, absent advice that even though he could not then talk with a lawyer, he did not have to answer questions or make a statement, in my judgment, the State has not met the burden of showing that Hyde's will was not overborne.

Hyde's written confession followed almost immediately after

his oral statement. He was given some food and then asked to write his statement. After the oral admission was obtained from him, the written confession followed as a natural and unbroken consequence without the break of a significant passage of time to remove the initial taint. If, as I believe, the oral statement was involuntary and inadmissible, the State must overcome the presumption that the improper influence which produced the first admission is still in effect until a cessation of that influence is definitely shown. The evidence to overcome and rebut such a presumption must be clear, strong and satisfactory and any doubt on the point must be resolved in favor of the accused. *Combs v. State, supra,* 237 Md. 435-36. Here the presumption has not been overcome.

I would reverse the conviction and remand the case for a new trial.

Judge McWilliams authorizes me to state that he concurs in the views herein expressed.