**William McFARLAND, Petitioner,**

v.

**Lawrence E. WILSON, Warden, California State Prison, San Quentin, California, Respondent.**

**No. 43436.**

United States District Court
N. D. California, S. D.
March 30, 1966.

Arthur Berggren, San Francisco, Cal., for petitioner.

Joyce Nedde, Deputy Atty. Gen., San Francisco, Cal., for respondent.

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ZIRPOLI, District Judge.

William McFarland, a state prisoner confined at San Quentin prison, petitions this Court for a writ of habeas corpus, in which he alleges that his conviction was secured in violation of the United States Constitution. The Court ordered

an evidentiary hearing, at which the facts hereinafter set forth were established.

Petitioner was convicted by the Superior Court of Los Angeles County of violating California Penal Code § 187 (murder in the first degree), California Penal Code § 211 on three separate counts (robbery), and California Penal Code § 664 (attempted robbery). The judgment of conviction was entered on September 28, 1958. Petitioner did not perfect an appeal from this judgment and now alleges that "petitioner did not know of his constitutional and statutory right to appeal". State habeas corpus remedies have been exhausted.

The uncontradicted portions of the record establish the following:

Petitioner was arrested by the Los Angeles Police on Saturday afternoon, May 10, 1958, and detained at a local substation pending transfer to the city jail. On Saturday evening he was moved to the city jail and remained there until Tuesday afternoon, May 13, 1958. Throughout his detention petitioner was treated as an ordinary prisoner. He received meals at the regular hours and participated in the normal routine of the city prison.

On Tuesday morning, March 13, at approximately 10 or 11 a. m., he was taken from his cell and given a polygraphic examination. At the conclusion of this test he was immediately taken to an interrogation room by the investigating officers. During this interrogation, which lasted for approximately two hours, he confessed his active participation in the crimes for which he was ultimately convicted. It is asserted that the entire conversation was recorded. Petitioner alleges that the transcript of this recording does not reflect all that occurred, but he does not dispute the accuracy of the alleged partial transcription that was accepted in evidence at his trial, over .the timely objection of counsel.

Petitioner was returned to the Newton Street substation later on the same afternoon. During this transfer he was taken to the vicinity of the crime and asked to identify the store in which the murder had occurred. Petitioner complied with the officers' request and identified the correct location. On arriving at the substation petitioner was again subjected to a question and answer interrogation wherein he rendered a second confession. This interrogation was transcribed by a stenographer and signed by petitioner.

Petitioner was not advised of his constitutional right to remain silent nor his right to obtain counsel. He had not been arraigned nor taken before a magistrate prior to volunteering his confession, although he had been in custody for three full days. At the time of his arrest petitioner was nineteen years of age and had only a junior high school education. After leaving school he had served two years in the military and his only prior experience with law enforcement officials resulted from two convictions for larceny while in the armed services.

The petition filed in this Court alleges that the incriminating statements introduced into evidence at petitioner's trial were obtained in violation of the fourteenth amendment.

Petitioner was convicted on September 26, 1958. That conviction had become final long prior to the decision of the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. This Court has recently held that the rule announced in the *Escobedo* case, supra, may not be applied retroactively to affect convictions which were final prior to its decision. Carrizosa v. Wilson, D.C., 244 F.Supp. 120.

It remains to be considered whether the incriminating statement in this case was properly admitted into evidence under the standards long required by the due process clause of the fourteenth amendment. Although it may now be assumed that the test of "voluntariness" has been fundamentally altered by the decision in Escobedo v. State of Illinois, supra, this Court cannot escape the difficult task of analyzing the circumstances surrounding this confession in accord with the stand-

ards enunciated in a long line of Supreme Court cases first made applicable to the states in Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192.

The decisions of the Supreme Court have articulated a number of relevant factors which bear on the ultimate question of whether a confession was "made freely, voluntarily and without compulsion or inducement of any sort". Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090. Yet the Court is ever aware of Justice Douglas' admonition that "there is no guide to the decision of cases such as this except the totality of circumstances * * *." as they relate to the procedural and substantive purposes which underlie the due process clause of the fourteenth amendment. Gallegos v. State of Colorado, 370 U.S. 49, 55, 82 S.Ct. 1209, 1213, 8 L.Ed.2d 325.

In addition to the uncontested facts previously discussed, there are a number of relevant factual allegations upon which the respondent joined issue.

During the course of his testimony at the evidentiary hearing, petitioner alluded to instances of physical mistreatment at the hands of the investigating officers. This physical abuse allegedly occurred during the course of the original interrogation and during transportation to the Newton Street substation after his initial confession. In substance these allegations are identical to petitioner's testimony on this issue at his original trial. Officers Williams and Seiger, who were the only officers implicated, appeared at the hearing held in this Court. Their testimony specifically contradicted all of petitioner's allegations of physical brutality. This testimony was both persuasive and detailed and was at least partially corroborated by the transcribed portion of the interrogation. Although the Court is well aware of the possibility that this transcription may not have covered all that occurred, its tenor reflects a relationship between the officers and the suspect that would have been impossible if petitioner had been subjected to any physical abuse. The Court finds that petitioner was not subjected to any physical brutality.

Petitioner had been held in police custody for three full days prior to his initial confession. It is conceded that he had not been arraigned nor informed of his rights to remain silent or to obtain counsel. Prolonged periods of incarceration under such circumstances are inherently coercive. See Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037. Although state practices have never been judged by the strict standards of prompt arraignment adopted by the Supreme Court in its general supervisory capacity over the federal system, the length of the detention which preceded petitioner's confession sheds serious doubts on its asserted voluntary character. See Gallegos v. State of Colorado, supra; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

Officer Seager testified that in 1958 it was common practice to delay arraignment until the conclusion of the police investigation. On its face this would indicate that the petitioner's detention was prolonged to enable the police to gather further information to insure that they had in fact arrested the proper man. See Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448. Unfortunately, there are facts in this record which belie such a laudatory purpose. Officer Williams testified that prior to petitioner's arrest he had been implicated by statements obtained from Hawkins and Goldman, his eventual codefendants. In addition, the testimony of both officers indicates that these statements had been verified by independent evidence. Under these circumstances, it is particularly unjustifiable to allow a defendant to languish in custody for three days prior to presentment before a magistrate. Although the record is unclear, it appears that petitioner was not arraigned until May 16.

Incommunicado detentions have been frequently condemned by the courts, yet a

precise definition of this expression has seldom been formulated.[1]

Petitioner testified that he made frequent requests to telephone his father after being taken into custody. These requests were allegedly directed to various police officers, including Officers Williams and Seager. Both flatly deny that any such request was ever made. In support of this position, the respondent points to the following portion of the transcript of the original interrogation:

"Q Ever since '53. Do you have people out here?

"A My father (*)

"SGT. WILLIAMS: His father runs a cleaning shop down in Watts.

"A You saw my father? (*) Don't say anything to him about this.

"SGT. SEAGER: We won't.

"SGT. WILLIAMS: There's no need for us to—

"A No relatives, nobody to say anything to—none of my people about it.

"Q BY SGT. SEAGER: However, I want you—I want you to consider this when you make a statement like that because we believe in being square.

"A They're not going to do nothing no way.

"Q Here's—here's one thought. Say for instance that your dad starts wondering where his son is.

"A Longing?

"Q Wondering. Is there any possibility of his wondering where his son is?

"A (*) Even have one, if he's going to wonder, just like you have a son and don't even know if you got one.

"Q How about if he should call?

"A Call over where?

"Q Call our office and make inquiry about you.

"A He's not even going to call.

Correction:

He's not going to even call.

"Q Huh?

"A He's not going to call.

"Q He won't call? Okay. Well, I'm getting hungry." (Reporters' Daily Transcript, Vol. 6 pp. 329–330)

The Court recognizes that petitioner's desire to contact his family might have changed after he had confessed to active criminal conduct, yet a careful review of the record indicates that the contrary inference is more probable.

It is virtually impossible for the respondent to locate unidentified police officers who may have been in contact with the petitioner more than seven years ago. Yet it is equally difficult for petitioner to do anything more than describe the time and place of the alleged requests. This he did not do until the time of the evidentiary hearing, and under this set of circumstances the Court concludes that petitioner has failed to carry the burden of proof. It should also be noted that although petitioner testified at great length about the circumstances surrounding his confession at the trial, he made no mention of the alleged phone requests.

Petitioner's counsel urges that the decision of the United States Supreme Court in Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513, compels a finding that the confession in this case was not "made freely, voluntarily or without compulsion of any sort". Wilson v. United States, 162 U.S. 613, 621, 16 S.Ct. 895, 40 L.Ed. 1090.[2]

A careful review of the Haynes case, supra, indicates that this petition pre-

---

1. This Court believes that the term "incommunicado" should be limited to situations where police practice or procedure effectively denies communication with the outside world. The focus of inquiry must be whether the suspect had a reasonable opportunity to obtain assistance if he so desired.

2. Linkletter v. Walker, 381 U.S. 618, 628, 638, 85 S.Ct. 1731, 14 L.Ed.2d 601, indicates that petitioner is entitled to urge the rationale of the Haynes case, although it was decided after his conviction had become final.

sents a question expressly left undecided in the Supreme Court opinion.

"If this were the only evidence of police coercion and inducement in the record, we would face the problem of determining whether, in view of the testimony of Lieutenant Wakeley and Detective Pike, the petitioner's own testimony would be sufficient, on review by this Court, to establish the existence of impermissible police conduct * * *. We need not pursue such an inquiry, however, since the record contains other probative, convincing, and uncontradicted evidence." Haynes v. State of Washington, 373 U.S. 503, 508, 83 S.Ct. 1336, 1340.

The Court in the *Haynes* case possessed independent evidence establishing the existence of the requests and their denial. In addition, the Washington police conceded that the appellant had been booked pursuant to a procedure which led to the automatic denial of phone requests. This is a clear example of intentional police conduct which effectively isolates the accused from any contact with either his friends, family or an attorney. The psychological pressures inherent in this type of effective isolation are apparent. The facts in this case do not indicate the use of any such procedure. The evidence introduced at the hearing held in this Court failed to establish that petitioner had been denied access to the outside world by police conduct. It would involve sheer speculation to reach any other conclusion. It is most probable that petitioner remained without outside assistance because of his failure to seek it.

Petitioner's traverse alleges that "On the fourth day of custody the interrogating officers began to intensify their coercive tactics by telling petitioner that he was going to experience the ordeal of death by poison by vividly describing the scent of execution in the gas chamber, by coercing both physically and verbally * * * ". These allegations remain unsubstantiated and were directly contradicted by the testimony of the investigating officers. To some extent the transcription of the interrogation supports the officers' testimony. A careful review of that transcript indicates that the only reference to the gas chamber was in response to petitioner's question about the possibility of capital punishment. This Court is convinced that the record reveals no instance of unlawful or coercive threatening by the interrogating officers. As noted earlier, petitioner contends that the transcript does not reveal all that occurred during the interrogation. There is a definite possibility that petitioner's version of what transpired may be true, yet after carefully evaluating the testimony of the officers and the transcript, this Court is convinced that the relationship between the officers and petitioner, as it appears from the transcript, could not have been sustained if they had attempted coercion or abuse.

The totality of the circumstances in this case does not indicate that petitioner's will had been overborne at the time he confessed. Lynumn v. State of Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922. Although petitioner was only nineteen years of age at the time of his arrest, he was certainly far more sophisticated following two years in the military than the appellants in either Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 or Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325. Nor does the record reveal persistent or continuous questioning such as was present in Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037.

The Court cannot conclude under the circumstances of this case that petitioner was placed in such a position that he could only infer that his already lengthy detention would be prolonged unless he cooperated with the investigating officers. Barring such an inference, there is no evidence which would justify a finding that petitioner's confession was not the product of his free will.

The petition for writ of habeas corpus is denied, the order to show cause discharged, and the proceedings herein dismissed.